UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:08-cr-45-JMS-MJD-01 |
| v. | ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| BILLY L. HICKS, JR. | (COMPASSIONATE RELEASE) |

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission, IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:08-cr-00045-JMS-MJD |
| ) | |
| BILLY L. HICKS, JR., ) -01 | |
| ) | |
| Defendant. ) | |

**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**

On June 16, 2020, defendant Billy L. Hicks, Jr., an inmate at FCI Milan, filed a pro se motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Dkt. 205. He filed an amended pro se motion on July 8, 2020. Dkt. 213. The Court appointed counsel to represent Mr. Hicks, and counsel filed a supporting memorandum on September 4, 2020. Dkt. 217. Mr. Hicks requests that the Court order his immediate release because he has medical conditions (including obesity, hypertension, and newly diagnosed type 2 diabetes and hyperlipidemia) that place him at an increased risk of experiencing severe symptoms if he contracts COVID-19, thereby constituting an extraordinary and compelling reason for a sentence reduction under § 3582(c)(1)(A)(i). *Id.* In response, the United States argues that Mr. Hicks would pose a danger to the community if released and that the sentencing factors in 18 U.S.C. § 3553(a) do not favor release. Dkt. 220. Mr. Hicks has supplemented the record four times with additional medical records, a release plan, and letters of support. Dkts. 221-2, 225-2, 227-2, 230-2.

For the reasons explained below, the motion for compassionate release is **DENIED**.

# I.
# BACKGROUND

*A. Mr. Hicks' Conviction and Sentence*

Mr. Hicks was indicted on March 19, 2008, for distribution of 50 grams or more of a mixture or substance containing cocaine base in violation of 21 U.S.C. §841(a)(1). Dkt. 1. A week later, an Information was filed pursuant to 21 U.S.C. §851(a)(1) due to his previous felony drug convictions. Dkt. 7. A jury found Mr. Hicks guilty in July 2009 and he was sentenced to life imprisonment. Dkts. 88, 94. On appeal, the conviction was vacated, dkt. 128, a new trial was scheduled, and on March 1, 2012, Mr. Hicks filed a plea of guilty pursuant to FRCP 11(c)(1)(C), dkt. 160. Pursuant to the agreement, the government moved to withdraw the § 851 Information as to two of his three felony drug convictions. Dkt. 160. On July 23, 2012, Mr. Hicks moved to withdraw his guilty plea. Dkt. 172. After a revised plea agreement was signed pursuant to FRCP 11(c)(1)(C), Mr. Hicks withdrew his motion to withdraw guilty plea. Dkts. 176, 178.

Mr. Hicks had an advisory guidelines range of 292-365 months, dkt. 165 (PSR ¶ 73); however, the acceptance of the binding plea agreement required a sentence of 300 months. *Id.* ¶ 6. With 15 criminal history points, he was placed in criminal history category VI. *Id.* ¶ 37. As a career offender, his offense level was found to be 37, *id.* ¶ 20, which included an 11-level enhancement for career offender status and acceptance of responsibility. *Id.* ¶ 22.

On October 2, 2012, the Court sentenced Mr. Hicks to a term of 300 months imprisonment to be followed by five years of supervised release. Dkt. 182.

Mr. Hicks has been in custody since 2008. Dkt. 165 at 1. The BOP reports that Mr. Hicks' earliest possible release date (with good time credit) is September 15, 2029.

Mr. Hicks is 48 years old. He is currently incarcerated at FCI Milan in Milan, Michigan. As of December 9, 2020, the Bureau of Prisons ("BOP") reports that 26 inmates and 8 staff

members at FCI Milan have active cases of COVID-19. It also reports that 85 inmates and 55 staff members at FCI Milan have recovered from COVID-19 and three inmates have died of COVID-19. https://www.bop.gov/coronavirus/ (last visited Dec. 9, 2020).

*B. Mr. Hicks' Criminal History*

Mr. Hicks has four previous felony convictions: (1) dealing in cocaine in 1993 (committed when he was 20 years old); (2) auto theft in 1996 (committed when he was 23 years old); (3) dealing in cocaine within 1000 feet of a public park in 1997 (committed when he was 24 years old), and (4) possession of cocaine in 2001 (committed when he was 29 years old). Dkt. 165, ¶¶ 29-33. At the time he was arrested for the instant offense, he was on probation. *Id.* ¶ 36. In fact, each time Mr. Hicks has been placed on probation, he violated by not reporting, committing a new offense (including dealing cocaine again and stealing a car and setting it on fire) and/or testing positive for a controlled substance. *Id.* ¶¶ 28-33. Because of his criminal history, Mr. Hicks was designated as a career offender. *Id.* ¶ 38.

Mr. Hicks also has several previous misdemeanor convictions, including possession of cocaine (1992), operating a vehicle without proof of financial responsibility (1996), and driving while license suspended (2006). *Id.* ¶¶ 28, 31, 33

At the time the PSR was filed, Mr. Hicks' Indiana Bureau of Motor Vehicles driving record indicated 28 suspensions, 21 convictions, and 42 current points, with the first suspension occurring on May 1996. *Id.* ¶ 34.

C. *Disciplinary History*

BOP records indicate that Mr. Hicks has been disciplined on eight occasions during his current incarceration. The incidents include fighting with another person, refusing to obey an

order, failing to follow safety regulations, refusing work, and being absent from assignment. Dkt. 220-2. His last charge, however, was in September 2016. *Id.*

## II.
## LEGAL STANDARD

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Under one exception to this rule, a court may reduce a sentence upon finding there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for a reduction based on "extraordinary and compelling reasons." Now, a defendant is also permitted to file such a motion after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018). The amended version of the statute states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

5

18 U.S.C. § 3582(c)(1)(A)(i).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* Before passage of the First Step Act, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c). U.S.S.G. § 1B1.13.

Section 1B1.13 sets forth the following considerations. First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, consideration of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent they are applicable." U.S.S.G. § 1B1.13.

As to the first consideration, Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the

reasons described in subdivisions (A) through (C)," "[a]s determined by the Director of the Bureau of Prisons." *Id.*, Application Note 1(D).

The policy statement in § 1B1.13 addresses only motions from the Director of the BOP. *Id.* ("Upon the motion of Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . "). It has not been updated since the First Step Act amended § 3582(c)(1)(A) to address motions that are filed by prisoners. As a result, the Sentencing Commission has not yet issued a policy statement "applicable" to motions filed by prisoners. *United States v. Gunn*, __ F. 3d __, 2020 WL 6813995, at *2 (7th Cir. Nov. 20, 2020). And, in the absence of an applicable policy statement, the portion of § 3582(c)(1)(A) requiring that a reduction be "consistent with the applicable policy statements issued by the Sentencing Commission" does not curtail a district court judge's discretion. *Id.* Nonetheless, the Commission's analysis in § 1B1.13 can guide a court's discretion without being conclusive. *Id.* As to motions brought under the "catchall" provision in Subsection (D), district judges should give the Director of the BOP's analysis substantial weight (if he has provided such an analysis), even though those views are not controlling. *Id.*

Accordingly, the Court evaluates motions brought under the "extraordinary and compelling" reasons prong of § 3582(c)(1)(A) with due regard for the guidance provided in § 1B1.13 by deciding: (1) whether a defendant has presented an extraordinary and compelling reason warranting a sentence reduction; (2) whether the defendant presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether the applicable sentencing factors in § 3553(a) favor granting the motion.

## III.
## DISCUSSION

At 6 foot 2 inches and 265 pounds, dkt. 217 at 2, Mr. Hicks is obese, having a body mass index ("BMI") of 34. https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm. On October 23, 2020, he was diagnosed with type 2 diabetes and hyperlipidemia. Dkt. 227-2. The Centers for Disease Control and Prevention has found that obesity with a BMI over 30 and type 2 diabetes are conditions that put a person at increased risk for severe illness if he contracts COVID-19.[1] The United States does not challenge Mr. Hicks' argument that he has presented extraordinary and compelling reasons supporting his request for compassionate release. Indeed, the Court acknowledges that the number of active inmate cases at FCI Milan has increased from one to 26 and from one to eight staff active cases since the United States filed its response in mid-September. *See* dkt. 220 at 8.

The United States argues, however, that Mr. Hicks poses a danger to the community under 18 U.S.C. § 3142(g) and that consideration of the sentencing factors in 18 U.S.C. § 3553(a) compel a conclusion that his motion for compassionate release must be denied.

*A. Danger to the Community*

Even though Mr. Hicks has presented extraordinary and compelling reasons warranting a sentence reduction, the Court must deny his motion because he presents a danger to the community. The Guidelines provide that compassionate release is appropriate only where the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) is the provision outlining the factors

---

[1] CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 9, 2020).

the Court must consider in determining whether a defendant should be detained pending trial. Section 3142(g) provides:

> **(g) Factors to be considered.**—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
> > **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> > **(2)** the weight of the evidence against the person;
> > **(3)** the history and characteristics of the person, including--
> > > **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> > > **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> > **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

First, Mr. Hicks' offense and several of his prior convictions involve dealing a controlled substance. Section 3142(g)(1). The second factor in section 3142(g) involves the strength of the evidence in the case. Mr. Hicks ultimately pleaded guilty after his conviction by jury trial was vacated due to the improper admission of prior unrelated drug convictions. Dkt. 128 at 13. The remand was not based on a lack of evidence.

The third and fourth factors involve the history and characteristics of the defendant and the nature and seriousness of the danger his release would pose to the community. As discussed above, as a career offender, Mr. Hicks' criminal history is significant, and his lack of respect for the law was demonstrated by him violating the law again every time he was on probation. The staggering

number of times his driver's license was suspended, 28, also reflects poorly on his ability to comply with the law.[2] The PSR lists several instances of Mr. Hicks failing to appear for court hearings. Dkt. 165 ¶¶ 29-30. Although Mr. Hicks contends that the fear of going back to prison during this pandemic would deter him from any future criminal activity, his history establishes that Mr. Hicks presents a serious risk of being a threat to the community and not being able to comply with any set of conditions that might be imposed on release.

Mr. Hicks is fortunate to have been able to maintain family ties, including with his fiancé, adult children, siblings, and his father. Dkts. 224, 230-1. He completed his GED while in prison, and he has taken advantage of the educational opportunities at FCI Milan. Dkt. 217-3. He lists potential job prospects if he were to be released to Dayton, Ohio. Dkt. 225-2. Mr. Hicks is encouraged to continue with his education and job training opportunities while he is incarcerated.

Mr. Hicks has had several disciplinary convictions, although the Court acknowledges that he has been able to refrain from write ups the past four years. Mr. Hicks should try to continue to demonstrate this good behavior.

After a consideration of Mr. Hicks' personal characteristics, the Court is not convinced that he is no longer a danger to the community. There is still a need for Mr. Hicks to serve a sentence that protects the community from further crimes.

*B. Section 3553(a) Factors*

The Court further finds that the applicable § 3553(a) sentencing factors weigh against granting Mr. Hicks compassionate release.

---

[2] Although the United States asserts that the BOP lists Mr. Hicks as a high risk of recidivism, dkt. 220 at 14 citing to Ex C, there is no Exhibit C and the Court does not discern any indication of the recidivism risk in Mr. Hicks' Inmate Profile. Dkt. 220-1.

The factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the defendant's crimes; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

Mr. Hicks' full-term release date is March 20, 2033, and with good time credit his earliest possible release date is September 15, 2029. Dkt. 220-1 at 3. Mr. Hicks has served approximately 12 and a half years of his 25-year sentence, or approximately 58% of his statutory sentence. Dkt. 220-1. It may be that the mandatory minimum sentence for Mr. Hicks' crime would be shorter if he were sentenced today. *See* 21 U.S.C. § 841(b) (eff. Dec. 21, 2018). At the time he was sentenced, however, Mr. Hicks received a sentence well above the mandatory minimum, *see* 21 U.S.C. § 841(b) (eff. Aug. 3, 2010 to Dec. 20, 2018); dkt. 165 at 14. Thus, the possible change to the mandatory minimum does not weigh strongly in favor of releasing Mr. Hicks. As noted, Mr. Hicks has a significant and serious criminal history and has not demonstrated the ability to abide by the law at any time he has been released from incarceration. Early release at this time would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment.

In addition, the Court finds that reducing his sentence to time served would not serve the purpose of protecting the public from future criminal conduct.

In sum, given its consideration of the applicable § 3553(a) factors, the Court concludes that the risk to Mr. Hicks from the COVID-19 pandemic is not enough to tip the scale in favor of release. *See United States v. Ebbers*, No. S402-CR-11443VEC, 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020) (in evaluating a motion for compassionate release, the court should consider whether the § 3553(a) factors outweigh the "extraordinary and compelling reasons" warranting compassionate release, and whether compassionate release would undermine the goals of the original sentence).

## IV.
## CONCLUSION

For the reasons set forth above, Mr. Hicks' motions and amended motion for compassionate release, dkt. [205], dkt. [213], and dkt. [217], are **DENIED**.

IT IS SO ORDERED.

Date: 12/10/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

All electronically registered counsel

12